SIGNATURE FINANCIAL LLC,

                Plaintiff,           **MEMORANDUM AND ORDER**
                                                        2:16-cv-6063 (DRH)(SIL)

- against –

CHICAGO ELITE CAB CORP., 2630-2632 S. DEARBORN AVE. REALTY, LLC, SYMON GARBER, GALINA SHEININ, ROMAN SAPINO, RUBEN GIACOMOZZI, BAROMETER II HACKING CORP., CHICAGO AUCTION CAB CO., CHICAGO POLO IX, INC., CHICAGO POLO V, INC., CHICAGO POLO VI, INC., CHICAGO POLO VII, INC., CHICAGO POLO VIII, INC., CHICAGO POLO X, INC., CHICAGO POLO XI INC., CHICAGO POLO XIII, INC., CHICAGO POLO XIV, INC., CHICAGO POLO XV, INC., CHICAGO POLO XVI, INC., CHICAGO POLO XVII, INC., HUMIDITY II HACKING CORP., LILLY CAB CORP., MOISTURE II HACKING CORP., RAINSTORM II HACKING CORP., SCORPION CAB CORP., SIENNA ZONE CAB CO., SLSJETS I CAB CORP., SLSJETS II CAB CORP., SLSJETS III CAB CORP., SLSJETS IV CAB CORP., SLSJETS V CAB CORP., SNOWFALL II HACKING CORP., SNOWSTORM II HACKING CORP., TYLER CRAZY ABOUT CHICAGO INC., BABY CAB CORP., BARBIE IN CHICAGO CAB CORP, D & G CAB CORP, GALA CAB CORP., I&B MIDWEST ENTERPRISE, INC., JULY CAB CORP., KILLER DOG CAB CORP., VIOLET ZONE CAB CORP., AMPLE SUN CAB CORP., LIGHT BREEZE CAB CORP., AUGUST CAB CORP., DANIELLA CAB CORP, MAMA FOUR CAB CORP., SHAUN LOVES CHICAGO, INC., SUSAN CAB CORP., TAXALE TAXI, INC., DAMMA CAB CORP, LUCKY SEVEN CHICAGO

THREE, INC., LUCKY SEVEN CHICAGO
TWO, INC., SNOWBLIND CAB CORP,
AQUA ZONE CAB CO., CRAZY JEFFREY
CAB CORP., KING EDWARD CAB CORP.,
PLAYING POLO IN CHICAGO INC.,

             Defendants.
-------------------------------------------------------X

**APPEARANCES**

**MORRIT HOCK & HAMROFF LLP**
Attorneys for Plaintiff
400 Garden City Plaza, Suite 202
Garden City, NY 11530
By: Robert S. Cohen, Esq.
   Julia Gavrilov, Esq.
   Marc Loren Hamroff, Esq.

**FOX ROTHSCHILD LLP**
Attorneys for Defendants
101 Park Avenue, 17th Floor
New York, NY 10178
By: Brett Berman, Esq.
   Robert J. Rohrberger, Esq.

**OLSHAN FROME WOLOSKY LLP**
Attorneys for Defendants
65 East 55th Street
New York, NY 10022
By: Howard Joseph Smith, III, Esq.
   Thomas J. Fleming, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Signature Financial, LLC ("Plaintiff") brought this action against Defendants Chicago Elite Cab Corp. ("Chicago Elite"), 2630-2632 S. Dearborn Ave. Realty, LLC, Galina Sheinin, Roman Sapino, Ruben Giacomozzi, Barometer II Hacking Corp., Chicago Auction Cab Co., Chicago Polo IX, Inc., Chicago Polo V, Inc., Chicago Polo VI, Inc., Chicago Polo VII, Inc.,

Chicago Polo VIII, Inc., Chicago Polo X, Inc., Chicago Polo XI Inc., Chicago Polo XIII, Inc., Chicago Polo XIV, Inc., Chicago Polo XV, Inc., Chicago Polo XVI, Inc., Chicago Polo XVII, Inc., Humidity II Hacking Corp., Lilly Cab Corp., Moisture II Hacking Corp., Rainstorm II Hacking Corp., Scorpion Cab Corp., Sienna Zone Cab Co., SLSJETS I Cab Corp., SLSJETS II Cab Corp., SLSJETS III Cab Corp., SLSJETS IV Cab Corp., SLSJETS V Cab Corp., Snowfall II Hacking Corp., Snowstorm II Hacking Corp., Tyler Crazy About Chicago Inc., Baby Cab Corp., Barbie In Chicago Cab Corp, D & G Cab Corp, Gala Cab Corp., I&B Midwest Enterprise, Inc., July Cab Corp., Killer Dog Cab Corp., Violet Zone Cab Corp., Ample Sun Cab Corp., Light Breeze Cab Corp., August Cab Corp., Daniella Cab Corp, Mama Four Cab Corp., Shaun Loves Chicago, Inc., Susan Cab Corp., Taxale Taxi, Inc., Damma Cab Corp, Lucky Seven Chicago Three, Inc., Lucky Seven Chicago Two, Inc., Snowblind Cab Corp, Aqua Zone Cab Co., Crazy Jeffrey Cab Corp., King Edward Cab Corp., and Playing Polo In Chicago Inc.[1] ("Defendants") for monetary damages for defaults on fifty-two promissory notes ("Notes").

Defendants bring the instant motion to dismiss pursuant to Fed. R. Civ. P. ("Rule") 12(b)(1) for lack of subject matter jurisdiction due to incomplete diversity of citizenship. (Mem. in Supp. [DE 32] at 2.) Plaintiff crossed-move to strike certain exhibits attached to a declaration submitted by Defendants in support of their Rule 12(b)(1) motion, on the basis that they were never served on Plaintiff, and Defendants' counsel responded to Plaintiff's inquiry by confirming that "there are no exhibits supporting [such] Declaration." (Plaintiff's Letter Motion to Strike ("Motion to Strike") [DE 37] at 1 (quoting Gavrilov Decl. [DE 33] ¶¶ 5–6).) Defendants oppose the motion to strike. (Reply to Motion to Strike [DE 38] at 1–2.) For the reasons stated below, the motion to strike is granted and the motion to dismiss is also granted.

---

[1] Plaintiff filed a Voluntary Dismissal as to Defendant Symon Garber in his individual capacity on January 12, 2017.

## BACKGROUND

The following facts come from the Parties' submissions and the Complaint.

Plaintiff is a New York limited liability company that is a lender. (*See* First Amended Complaint ("FAC") [DE 22] ¶¶ 64 et seq.) On or about June 25, 2015, Plaintiff entered into fifty-two promissory notes (the "Notes") with fifty-two Defendant Borrowers ranging from $750,000.00 to $1,750,000.00. (*Id.*). All of these Notes are purported to be guaranteed by Defendants Chicago Elite Cab Corp. ("Chicago Elite") and 2630-2632 S. Dearborn Ave Realty, LLC (the "Corporate Guarantors"). (*Id.*) Plaintiff further alleges that the Notes were personally guaranteed by one or more individual guarantors, including Galina Sheinin, Roman Sapino, and Ruben Giacomozzi. (*Id.*) Plaintiff also alleges that as security for the Notes, the Defendant Borrowers entered into fifty-two separate security agreements which granted security interests in certain taxicab medallions. (*Id.*) Finally, Plaintiff claims that Ramon Sapino, in his individual guarantor capacity, executed a Cross Collateralization and Cross Default Agreement that provided that his personal individual guaranties and the security interests granted in certain taxicab medallions would serve as additional security for any obligations arising under the guaranty executed by Defendant 2630-2632 S. Dearborn Ave. Realty, LLC. (*Id.* ¶ 2316.)

Pursuant to the Notes, Defendants were generally required to pay Plaintiff thirty-five monthly payments of principal and interest, and a thirty-sixth balloon payment of the unpaid principal balance plus any accrued interest and any other sums owing. (*Id.* ¶¶ 70–71.) The Notes provide that in the event of default the unpaid principal balance, all accrued interest, and any other sums become immediately due and payable. (*Id.* ¶ 74.) Plaintiff alleges that Defendant Borrowers failed to make their monthly payments on the fifty-two promissory notes beginning on August 15, 2016, and each and every monthly payment due thereafter. (*Id.* ¶ 73.)

Accordingly, Plaintiff alleges that it is due over $57,000,000.00 under the Notes, replevin of collateral and attorneys' fees and costs. (*Id.* ¶ 1.)

Plaintiff brought the instant action on November 1, 2016, and filed the FAC on January 30, 2017. Defendants filed a letter with the Court requesting a pre-motion conference for an impending motion to dismiss on February 21, 2017. Defendants brought the instant motion on May 26, 2017. Curiously, Defendants filed a declaration in support of their motion which purports to attach tax documents and certain correspondence, however no such documents were attached. Defendants later attached the referenced correspondence to their Reply Memorandum, but they never attached the tax documents or addressed the absence thereof.

On June 2, 2017, Plaintiff filed a Letter Motion to Strike certain exhibits to the Garber Declaration without filing the required request for a pre-motion conference. Plaintiff explains that Defendants' original motion papers that Defendants served on Plaintiff made reference to exhibits to the Garber Declaration but none were attached, and when Plaintiff requested copies of the exhibits Defendants' counsel stated that there were none. (Motion to Strike at 1–2.) Plaintiff further alleges, however, that when Defendants ultimately filed all the motion papers with the Court, the correspondence exhibits were attached as part of their reply. (*Id.*) Defendants replied to the Motion to Strike on June 5, 2017.

## DISCUSSION

### I. Motion to Strike

As the exhibits at issue in the Motion to Strike may have bearing on the Motion to Dismiss, the Court will consider the Motion to Strike first.

Plaintiff offers no legal authority in support of its motion to strike. Plaintiff merely states that submitting the exhibits for the first time on reply was inappropriate and prejudicial to

Plaintiff because it "denies Plaintiff the opportunity and right to formally respond." (Motion to Strike at 2.) In their reply, Defendants do not deny Plaintiff's allegations. (*See* Reply to Motion to Strike at 1–2.) Rather, Defendants argue that Plaintiff failed to follow the proper procedure in bringing the Motion to Strike, and that the exhibits are not prejudicial to Plaintiff because they originated with Plaintiff. (*Id.*) The Court finds that Defendants' conduct was inappropriate. Under the circumstances, the Court exercises its discretion to forego the requirement of a pre-motion conference letter and will entertain the motion to strike.

Motions to strike are "generally disfavor[ed]" so courts use "a scalpel and not a butcher knife in resolving such motion." *Trustees of Local 8A-28A Welfare Fund v. American Group Administrators*, 2017 WL 3700899, at *1 (E.D.N.Y. August 25, 2017) (citing *Perez v. Volvo Car Corp.*, 247 F.3d 303, 315 (1st Cir. 2001)). In considering whether to strike exhibits on a motion to dismiss, courts will consider whether the documents are in dispute, *see L.S. v. Webloyalty.com, Inc.*, 2014 WL 3547640 (D. Conn. July 17, 2014), whether the exhibits are improperly attached under the relevant Federal Rules, *see Stone v. Sutton View Capital, LLC*, 2017 WL 6311692 (S.D.N.Y. Dec. 7, 2017), whether the court can take judicial notice of the exhibits, *City of Livonia Employees' Retirement System v. Essner*, 2009 WL 1809984 (S.D.N.Y. June 25, 2009), whether the exhibits raise matters that are appropriate for consideration at the pre-discovery stage, *In re Elan Corp.*, 2004 WL 1305845, at *1, n.1 (S.D.N.Y. May 18, 2004), and whether the exhibits are in compliance with local rules, *see Laboy v. Ontario County, N.Y.*, 56 F. Supp. 3d 255, 259 (W.D.N.Y. 2014) (noting that "[a] district court has discretion in deciding whether to strike a submission not in compliance with a local rule.") None of these are at issue here, and neither party has provided the Court with any relevant legal authority. However, based on Defendants' conduct—the substance of which Defendants do not deny—this

Court grants Plaintiff's motion and accordingly will not consider the exhibits in deciding Defendants' 12(b)(1) motion. *See Duttweiller v. Eagle Janitorial, Inc.*, 2009 WL 5171834, at *3 n.4 (N.D.N.Y. Dec. 22, 2009), *aff'd*, 407 Fed. Appx. 552 (2d Cir. 2011) (noting that a district court has discretion to strike inappropriate portions of a submission).

## II. Motion to Dismiss Pursuant to Rule 12(b)(1)

### A. Legal Standard

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). "In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006) (quoting *Reserve Solutions Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 286 (S.D.N.Y. 2006)), *aff'd*, 273 F. App'x 61 (2d Cir. 2008); *accord Tomaino v. United States*, 2010 WL 1005896, at *1 (E.D.N.Y. Mar. 16, 2010). "In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions." *Cunningham v. Bank of New York Mellon, N.A.*, 2015 WL 4101839, * 1 (E.D.N.Y. July 8, 2015) (citing *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

Here, Plaintiff pleads diversity of citizenship under 28 U.S.C. § 1332 as the basis for federal jurisdiction. "It is well established that for a case to come within this statute there must be complete diversity and that diversity is not complete if any plaintiff is a citizen of the same state as any defendant." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990). "[D]iversity of citizenship 'should be distinctly and positively averred in the pleadings, or should

appear with equal distinctness in other parts of the record.'" *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996) (quoting *Wolfe v. Hartford Life & Annuity Ins. Co.*, 148 U.S. 389 (1893)).

      B.  The Parties' Arguments

Defendants claim that "there is not complete diversity of citizenship because at least one of the Defendants [viz, Chicago Elite] has a principal place of business in the State of New York, and Plaintiff 'is a limited liability company organized under the laws of the State of New York, with its principal place of business at 225 Broad Hollow Road, Melville, New York 11747.'" (Mem. in Supp. at 3 (quoting Compl. ¶ 4).) Specifically, Defendants claim that Chicago Elite's principal place of business is in the state of New York under the "nerve center" test. (Mem. in Supp. at 4.) Additionally, Defendants claim that the allegations in the Complaint are facially insufficient for diversity purposes because the Complaint fails to establish the citizenship of the four individual Defendants or the citizenship of the members of Defendant 2630-2632 S. Dearborn Ave. Realty, LLC. ("Dearborn Ave.") (*Id.*)

In response, Plaintiff argues that Chicago Elite's principal place of business is in the State of Illinois and it is judicially estopped from arguing otherwise. (Mem. in Opp. [DE 34] at 3.) In support of this assertion, Plaintiff cites to a Statement of Jurisdiction Defendant Chicago Elite filed in a prior Federal Court action, *Monahan v. Chicago Carriage Cab Corp.*, No. 08-cv-3438 (N.D. Ill. 2009), stating that its principal place of business is located in the State of Illinois. (*Id.* at 2 (citing Gavrilov Declaration Ex. A. [DE 33]).) Plaintiff also argues that Chicago Elite's principal place of business is in Illinois under the nerve center test. (Mem. in Supp. at 3.) Finally, Plaintiff asks the Court to deny Defendants' motion as to the individual Defendants and

Dearborn Ave. until Plaintiff has had an opportunity to conduct discovery based on "Defendants' lack of documentary evidence and Garber's disingenuous claims[.]" (*Id.* at 4.)

    C.  Judicial Estoppel

Plaintiff cites no legal authority in support of its assertion that Chicago Elite is judicially estopped from arguing that its principal place of business is in New York. Rather, Plaintiff argues that Chicago Elite's change in position as to its principle place of business was "manufactured for the sole purpose of avoiding the very Federal Court jurisdiction it availed itself of when it was to its benefit." (Mem. in Opp. at 7.) The Second Circuit has already established that "'principles of estoppel do not apply' to questions of subject matter jurisdiction." *Creaciones Con Idea, S.A. de C.V. v. Mashreqbank PSC*, 232 F.3d 79, 82 (2d Cir. 2000) (quoting *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). In fact, the Second Circuit explained that the "defendant's assertions about its corporate citizenship in unrelated cases . . . could not preclude either the defendant from arguing, or the district court from concluding, that diversity jurisdiction was absent in this case." *Creaciones*, 232 F.3d at 82 (citing *Wight v. Bankamerica Corp.*, 219 F.3d 79, 90 (2d Cir. 2000)).

Moreover, judicial estoppel only applies when a party has *succeeded* in maintaining a contrary legal position in another case. *New Hampshire v. Maine*, 532 U.S. 742, 740 (2001) (citing *Davis v. Wakelee*, 156 U.S. 680, 689 (1895) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position[.]")). In the *Monahan* case, the court never decided whether Chicago Elite's principal place of business was in Illinois. (*See* Reply Mem. in Further Supp. [DE 36] at 4.) The *Monahan* case was originally dismissed for lack of subject matter jurisdiction based on the plaintiff's failure to allege an amount in

controversy, and then when the case was reinstated the parties promptly settled. (*Id.* at 3–4.) Thus, judicial estoppel does not apply.

As one final note, the statement of jurisdiction in *Monahan* was filed seven years before the instant action was brought. The relevant time period in question is the date this action was commenced. In other words, Chicago Elite's principal place of business in 2009 is not necessarily determinative as to where the company's principal place of business was in 2016.

### D. The Motion to Dismiss for Lack of Subject Matter Jurisdiction is Granted

Preliminarily, although not raised by Defendants, the Court notes that Plaintiff's allegations regarding its own citizenship are facially insufficient. The citizenship of a limited liability company ("LLC") is determined by the citizenship of each of its members. *See, e.g., Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC*, 692 F.3d 42, 49 (2d Cir. 2012); *Handelsman v. Bedford Vill. Assocs. Ltd P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000). "A complaint premised upon diversity of citizenship must allege the citizenship of natural persons who are members of a limited liability company and the place of incorporation and principal place of business of any corporate entities who are members of the limited liability company." *New Millennium Capital Partners, III, LLC v. Juniper Grp. Inc.*, 2010 WL 1257325, at *1 (S.D.N.Y. Mar. 26, 2010), (citing *Handelsman,* 213 F.3d at 51–52)); *Bishop v. Toys "R" Us-NY LLC*, 414 F. Supp.2d 385, 389 n.1 (S.D.N.Y. 2006), *aff'd*, 385 Fed. App'x 38 (2d Cir. 2010). Plaintiff has failed to provide the citizenship of each of its own members, which is an independent ground for dismissal. The FAC is also deficient in this regard as to Defendant 2630-2632 S. Dearborn Ave. Realty, LLC, because it fails to provide the citizenship of any of its members. (*See* FAC ¶ 5.)

As Defendant Chicago Elite is not estopped from making the argument that its principal place of business is in New York, the Court must now evaluate the evidence in the record under the nerve center test. For diversity jurisdiction, 28 U.S.C. § 1332(c)(1) provides that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." The Supreme Court explained in *Hertz Corp. v. Friend*, that the principal place of business "is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities[.]" 559 U.S. 77, 93 (2010). This is also known as the "nerve center." *Id.*

As evidence that Chicago Elite's principal place of business is in New York, Defendants submit a sworn declaration from the President and majority shareholder of Chicago Elite, Mr. Symon Garber.[2] Mr. Garber states in his declaration that (1) he and his partners maintain the corporate headquarters of their national taxi-medallion business in New York; (2) four of the five corporate shareholders of Chicago Elite live and work in New York and maintain offices in Manhattan; (3) Mr. Garber holds in-person meetings in New York; (4) shareholder and executive-level meets are conducted in New York; (5) meetings with retained professionals, including attorneys and financial consultants; are conducted in New York; (6) all relevant financial data is compiled and analyzed in New York; (7) corporate business planning meetings regarding finances are held in New York; (8) most of the correspondence addressed to lenders such as Plaintiff are issued by Mr. Garber from New York; and (9) Plaintiff sends statements to Chicago Elite at its New York headquarters in Long Island City. (Mem. in Supp. at 5–6 (citing Garber Decl ¶¶ 4, 6, 7, 10, 11, 18, 19, 23).) In response, Plaintiff argues that Defendants do nothing more than "mimic the language of the *Hertz* decision and, other than asserting in

---

[2] The Garber Declaration itself was not the subject of the motion to strike, that the Court granted *supra*.

conclusory fashion that all decisions on behalf of Chicago Elite are made at the Long Island City office, provides no documentary evidence to support its allegations." (Mem. in Opp. at 8–9.)

The Court is unpersuaded by Plaintiff's argument. Defendants have done more than make conclusory statements that track the Supreme Court's language in *Hertz*. Defendants make extremely specific allegations regarding the types of meetings held at the offices in New York, the type of work conducted at the New York office, and where the corporate officers live and work. While Defendants' argument would have been bolstered by additional specific evidence, the lack thereof is not dispositive. *See Greene v. Paramount Pictures Corp.*, 2017 WL 4011240, at *3 (E.D.N.Y. Sept. 11, 2017) (finding that the court lacked subject matter jurisdiction and citing to the "Declarations of [Defendant Officers], in which they attest that as of the filing of this action, Defendant Sikelia was headquartered in New York City, all of its officers were located in New York City, and all employees worked out of the New York City office" and that Defendant "maintains bank accounts in New York City"); *see also Greystone Bank v. Tavarez*, 2010 WL 3311835, at *1 (E.D.N.Y. June 10, 2010) ("The declaration of plaintiff's Vice President . . . establishes that plaintiff's 'nerve center' and corporate headquarters . . . are one and the same and, thus, demonstrates by a preponderance of the evidence that complete diversity exists" (internal quotations omitted)).

Plaintiff cites *Cofimco USA, Inc. v. Mosewicz*, 2016 WL 1070854, at *4 (S.D.N.Y. March 16, 2017), for the contention that a self-serving declaration is inadequate to establish the location of a defendant's principal place of business. However, this case is readily distinguishable because in *Comfico* the declarations stated legal conclusions (such as, defendant "directs, controls, and coordinates" day-to-day activities from X location) without any supporting details.

*See id.*[3]  As discussed above, here, the Garber declaration includes specific details evidencing that Chicago Elite's principal place of business is in New York.  Moreover, Plaintiff bears the burden of demonstrating diversity and Plaintiff offers no evidence to call into question the Declaration proffered by Defendants that Chicago Elite's principal place of business is in Chicago, other than a seven-year-old statement of jurisdiction from another case.  This is insufficient.

Based on the evidence, the Court finds that Chicago Elite's principal place of business is in New York and diversity is not complete.  Accordingly, the Court does not have subject matter jurisdiction.[4]  Parenthetically, Plaintiff identifies itself as an LLC but does not identify the citizenship of its own members.  To reiterate, that in and of itself is a fatal defect in the pleading.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to Rule 12(b)(1) is granted for lack of subject matter jurisdiction. The matter is dismissed and the Clerk of Court is directed to close the case.

**SO ORDERED.**

Dated: Central Islip, New York
       March 19, 2018

/s/
Denis R. Hurley
Unites States District Judge

---

[3] The cases that the *Cofimco* court cites are summary judgment cases and are also distinguishable from the facts here.  *See Cofimco*, 2016 WL 1070854, at *4 n.36 (citing *Law Offices of Bruce E. Baldinger, LLC v. Barchha*, 2015 WL 1284266, at *3 (S.D.N.Y. March 20, 2015)).

[4] It is unnecessary for the Court to discuss Defendants' effectively moot argument about the individual defendants, the only defendants as to which Plaintiff sought leave to amend its FAC.